Eastern District of Kentucky
FILED
OCT 17 2025
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 25-CR-25-GFVT

UNITED STATES OF AMERICA                                                              PLAINTIFF

V.                                              **PLEA AGREEMENT**

ISAIAS SANTOS-TRUJILLO                                                                DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the Indictment charging a violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute a mixture or substance containing 5 kilograms or more of cocaine, a Schedule II controlled substance.

2. The essential elements of 1 are:

    (a) that the Defendant, and others, did engage in a conspiracy or agreement to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, Schedule II controlled substance, and

    (b) that the Defendant knew the purpose of the agreement and voluntarily joined the conspiracy;

    (c) that the quantity of cocaine attributable to and foreseeable to the Defendant is 5 kilograms or more.

3. As to the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On February 11, 2025, DEA Lexington was contacted by a DEA from Arkansas (Ark.) who stated members of the Arkansas State Police (ASP) conducted a traffic stop on a vehicle traveling northbound on Interstate 40 in ARK. During the investigation, approximately 28 kilograms of suspected cocaine was located in an aftermarket hidden compartment. Agents determined that that the vehicle was traveling to Lexington, KY. The suspected cocaine was field tested and returned a presumptive positive for cocaine.

(b) The investigation determined the vehicle was supposed travel to Lexington, KY, where the exact location to meet would be disclosed. The DEA inserted replacement (non-cocaine) kilograms for the delivery into the hidden compartment inside the load vehicle. The vehicle was then provided instructions and was escorted to an area in close proximity to an address on North Broadway, Lexington, Fayette County, KY, in the Eastern District of Kentucky (EDKY). The vehicle was under continual surveillance of agents and officers.

(c) On February 12, 2025, contact was made with an unknown subject who advised that the vehicle was close to the North Broadway location. The vehicle was then surveilled traveling straight to the directed location. During surveillance on the same day, surveillance agents observed an unknown male Hispanic, subsequently identified as the Defendant exiting the front door of a residence located on Broadview Drive, Lexington, KY. The Defendant was observed walking in the direction of the load vehicle. The Defendant was observed on the telephone before he appeared to be directed to the vehicle. The Defendant was observed entering the front passenger seat of the vehicle. Subsequently, the Defendant entered the driver's seat, departed the parking lot, and was observed traveling directly to the residence on Broadview Drive, Lexington, KY.

(d) At the address on Broadview Drive, Lexington, KY, the Defendant was observed opening the garage door of the detached garage and pulling the vehicle into the garage. Based on the Defendant taking control of the vehicle, driving it to the address on Broadview Drive, and pulling it into the detached garage, members of the DEA, Kentucky State Police, and Lexington Police Department approached the Defendant and detained him without incident. Members of the DEA then knocked and announced their presence at the front door of the residence and contacted an unidentified Hispanic female. DEA personnel then conducted a protective sweep of the residence with no other subjects being located in the residence.

(e) Members of the DEA conducted an interview with Defendant with the assistance of a Spanish speaking agent. The Defendant claimed that he had just awakened and observed a new vehicle parked in the driveway. The Defendant stated once he went outside to look at the vehicle he then observed law enforcement arrive.

(f) A subsequent investigation revealed that the Defendant had just arrived from Mexico and had only been in the United States for a few days. The Defendant had agreed with another person to accept package/shipments of cocaine, but did not know how much cocaine would be in the packages. Subsequent to his arrest, the Defendant's phone received two messages from another subject on how to open the aftermarket compartment which contained the alternative cocaine packages as articulated above.

(g) The amount of suspected cocaine was sent to the Kentucky States Police Lab for analysis. The suspected cocaine tested positive for cocaine, a Schedule II controlled substance with an approximate weight of 28 kilograms. Said amount is consistent with distribution as opposed to mere possession.

4. The statutory punishment is imprisonment for not less than 10 years, a fine of not more than $10,000,000, and a term of supervised release of at least 6 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 2024 Manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the above listed facts.

(c) Pursuant to U.S.S.G. § 2D1.1, the United States and the Defendant agree that base offense level is 32 as the amount of cocaine is at least 15 kilograms but less than 50 kilograms.

(d) Pursuant to U.S.S.G. § 3B1.2(b), decrease the offense level by 2 levels for a "minor role" adjustment.

(e) Pursuant to U.S.S.G. § 5C1.2, decrease the offense level by 2 levels as the United States agrees that Defendant has met all five criteria for the "safety valve" reduction.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant ~~waives~~ [reserves] the right to appeal any the final sentence that exceeds 120 months. [JR] [TS] Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a

financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should

not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

11 . This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

12 This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. MCCAFFERY
ACTING U.S. STATES ATTORNEY

Date: 10/17/25     By: _____ AUSA
Roger W. West
Assistant United States Attorney

Date: 10/17/25     _____
Isaias Santos- Trujillo
Defendant

Date: 10/17/25     _____
John Reynolds
Attorney for Defendant